UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ORTEZ M., | ) |
| | ) |
|    Plaintiff(s) | ) |
| | ) |
| vs. | )   Case No. 1:24-CV-215 SRW |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
|    Defendant(s). | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 15. Defendant filed a Brief in Support of the Answer. ECF No. 16. Plaintiff filed a Reply. ECF No. 17. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

**I.      Factual and Procedural Background**

On August 25, 2022, Plaintiff Ortez M. protectively filed an application for supplemental security income (SSI) under Title XVI, 42 U.S.C. §§ 1381, *et seq.*, with an alleged onset date of

---

[1] At the time this case was filed, Martin O'Malley was the Commissioner of Social Security. Frank Bisignano became the Commissioner of Social Security in May 2025. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name, and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Frank Bisignano for Martin J. O'Malley in this matter.

April 15, 2022. Tr. 29, 48, 80, 93, 180-86.[2] Plaintiff's applications were denied upon initial consideration and reconsideration. Tr. 81-87, 94-101. On May 4, 2023, he requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 117-20.

Plaintiff appeared for an online video hearing, with the assistance of counsel, on November 30, 2023. Tr. 44-63. Plaintiff testified concerning his disability, daily activities, and functional limitations. *Id*. During the hearing, the ALJ received testimony from vocational expert ("VE") Jenifer Larue. *Id*. On May 31, 2024, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 38-43. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 175-77. On November 4, 2024, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. Accordingly, the ALJ's decision stands as the Commissioner's final decision.[3]

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his

---

[2] The SSA's paperwork contains a discrepancy as to the date Plaintiff filed his application. *See* Tr. 180-86 (listing the filing date as September 1, 2022), *compare to* Tr. 80, 93 (listing the filing date as August 25, 2022). This discrepancy does not affect the Court's decision.

[3] The Court notes Plaintiff previously filed an application for SSI on September 5, 2006. Tr. 67. An ALJ found him not be disabled on May 14, 2008. Tr. 67-77.

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir.

3

2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III. The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 25, 2022, the application date. Tr. 32. Plaintiff has the severe impairment of bilateral hand burns with scarring. *Id.* Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 33. The ALJ found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: the claimant can frequently climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He cannot tolerate concentrated exposure to temperature extremes or work hazards. He cannot be exposed to vibration. He cannot work overhead or reach overhead with his bilateral upper extremities. He can frequently reach in all other planes. He can occasionally push and pull with his bilateral upper extremities. He can occasionally finger, feel, and handle with his bilateral upper extremities.

*Id.*

5

Plaintiff has no past relevant work and has a limited education. Tr. 37. He was born on October 4, 1999, which is defined as a younger individual age 18-49, on the date the application was filed. *Id.* The ALJ found that transferability of job skills was not an issue because the Plaintiff did not have past relevant work. *Id.*

Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform, including Usher (*Dictionary of Occupational Titles* ("*DOT*") No. 344.677-014, light work, with 4,000 jobs in the national economy); Counter Clerk (*DOT* No. 249.366-010, light work, with 1,000 jobs in the national economy); and Furniture Retail Consultant (*DOT* No. 295.357-018, sedentary work, with 50,000 jobs in the national economy). *Id.* The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since August 25, 2022, the date the application was filed. Tr. 38.

## IV.   Discussion

Plaintiff presents two assignments of error: (1) the ALJ erred in failing to keep the record open for the psychiatric report of Dr. Dinwiddie; and (2) the ALJ erred in failing to place controlling weight on the findings of Plaintiff's treating physicians who examined, diagnosed and documented their treatment. ECF No. 15.

### A.  Dr. Dinwiddie's Medical Record

Plaintiff appeared for an online video hearing on November 30, 2023. Tr. 44-63. His counsel requested that the record remain open for 30 days, or until December 30, 2023, so he could submit a vocational rehabilitation screening. Tr. 29, 48. Plaintiff's counsel represented the screening was set for the same day as the hearing and would "be a couple of days before [they] actually get the report." Tr. 48. The ALJ approved the request, however, the screening was not

6

submitted. *Id.* Consequently, on January 9, 2024, the ALJ sent the following letter to Plaintiff's counsel:

> I held the record open subsequent to the hearing . . . so that you could submit additional evidence. You neither submitted such evidence nor sent a request for more time.
>
> If you do not send the evidence, request additional time, or satisfactorily explain why you cannot submit the requested evidence, within 10 days of the date of this letter, I will make my decision based on the available evidence.

Tr. 305.

In response, Plaintiff's attorney wrote a letter to the ALJ, dated January 10, 2024, with the following explanation and request:

> Please be advised I have not received the vocational expert records for our client, Ortez [M.]. I would request the record remain open until I receive those records. Once I receive the vocational expert records, I will forward those promptly for your consideration.

Tr. 307.

On March 18, 2024, the ALJ sent a letter to Plaintiff's counsel to confirm he received two documents marked as Exhibits "C-21F" and "C-22F." Tr. 308-11. C-21F is the resume of consulting physician Dr. Anubha Agarwal, M.D. Tr. 1051-54. C-22F is a record titled, "Medical Statement of Ability to Do Work-Related Activities (Physical)," completed by Dr. Agarwal. Tr. 1055-64.

In response, Plaintiff's attorney wrote a letter to the ALJ, dated March 26, 2024, with the following explanation and request:

> I am in receipt of your letter dated March 18, 2024, which I received on March 25, 2024. Please be advised I have not received the vocational expert records for our client, Ortez [M.]. I have been in contact with the vocational expert and he is working on getting the records to me. I would request the record to remain open for thirty (30) days, to allow time to receive those records. Once I receive the vocational expert records, I will forward those promptly for your consideration.

Tr. 313.

7

On April 5, 2024, Plaintiff's counsel sent another letter to the ALJ asking for the record to remain open for the submission of a different document unrelated to the past due vocational rehabilitation screening:

> Based on the physical assessment evaluation by the Social Security Administration, [claimant] will be evaluated by a psychologist in Chicago, IL, to complete a mental assessment addressing the post-traumatic stress syndrome he is experiencing. I would request the record to remain open to allow time for this evaluation and for our office to receive those records. Once I receive the psychology evaluation, I will forward those promptly for your consideration.

Tr. 314.

No other letters or correspondence were sent to the ALJ for two months. Thus, on May 31, 2024, the ALJ wrote the following:

> The undersigned denies [Plaintiff's] motions to keep the record open. The undersigned closed the record 30 days after [Plaintiff's] March 26, 2024, 30-day extension request. Therefore, the undersigned closed the record on April 25, 2024.
>
> The undersigned denies [Plaintiff's] motions to keep the record open for the following reasons. During the November 30, 2023, online video hearing, the undersigned agreed to keep the record open for 30 days so that [Plaintiff] could submit the [Plaintiff's] vocational rehabilitation screening records related to the [Plaintiff's] personal injury lawsuit. [Plaintiff] failed to submit the records within the 30 days, and he requested on January 10, 2024, that the record remain open until he received the records. [Plaintiff] requested on March 26, 2024, that "the record to remain open for thirty (30) days" so that he could submit the [Plaintiff's] vocational expert records. [Plaintiff] failed to submit the vocational records within the 30 days or request an extension prior to the 30-day deadline. Therefore, the undersigned closed the record on April 25, 2024.
>
> The undersigned denies [Plaintiff's] April 5, 2024, motion to keep the record open until "a mental assessment addressing the post-traumatic stress syndrome he is experiencing" could be performed and the records submitted. The undersigned denies this motion because the undersigned kept the record open following the November 30, 2023, online video hearing for the limited purpose of submitting the [Plaintiff's] vocational rehabilitation screening records.

Tr. 30 (internal citations omitted). The ALJ then issued an unfavorable decision finding Plaintiff not disabled. Tr. 38-43.

8

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 175-77. On November 4, 2024, the Appeals Council denied Plaintiff's request for review. Tr. 1-5. The Appeals Council indicated that Plaintiff had submitted a "psychiatric report from Dr. Stephen Dinwiddie dated July 24, 2024," but that it did "not show a reasonable probability that it would change the outcome of the [ALJ's] decision." Tr. 2. *See* Tr. 15-24 (Dr. Dinwiddie's report).

Plaintiff argues this matter should be reversed because the ALJ erred by refusing to allow the record to remain open so he could submit Dr. Dinwiddie's expert opinion regarding his PTSD. ECF No. 15 at 8-10. He contends that without the additional opinion, the record did not contain sufficient medical evidence related to his PTSD. *Id.* In response, the Commissioner asserts that the ALJ did, in fact, fulfill his duty to develop the record. ECF No. 16 at 3-6. The Commissioner highlights that Plaintiff filed his application for SSI benefits due to "burns" only. *Id.* at 4 (citing Tr. 206). At the hearing, Plaintiff limited his complaints to physical impairments as he did not mention any issues regarding PTSD. *Id.* (citing Tr. 44-63). The Commissioner also points out that the entirety of the medical record does not indicate any specific treatment for PTSD or other mental issues. *Id.*

The provisions of the Social Security Administration's *Hearings, Appeals, and Litigation Law Manual* ("HALLEX") provides that an ALJ should determine whether to leave the record open for the submission of additional evidence when a claimant indicates there is additional evidence to submit, as well as how long the record will remain open. *See* HALLEX I–2–6–78, 1993 WL 751904 (Sept. 2, 2005). *See also* 20 C.F.R. 416.1444 (ALJ has discretion whether to hold record open for further proceedings). Here, the ALJ agreed to hold the record open for 30 days after the hearing, or until December 30, 2023, so Plaintiff could submit a *vocational rehabilitation screening*. Tr. 29, 48.

9

After the deadline expired, the ALJ tried to obtain the records by sua sponte extending the deadline to January 19, 2024. Plaintiff again requested additional time, and the ALJ kept the record open until April 25, 2024. Approximately five months had passed from Plaintiff's first hearing held on November 30, 2024, and almost a year from the date Plaintiff requested a hearing before the ALJ. The Court does not find Plaintiff was treated unfairly by the ALJ or that the ALJ abused his discretion by refusing to keep the record open past April 25, 2024, after allowing Plaintiff 5 months to submit the record, which Plaintiff never delivered. *See Hubbard v. Colvin*, 2014 WL 3600361, at *10 (E.D. Mo. July 21, 2014) (finding ALJ did not err by declining to keep the record open after sufficient time has passed from the hearing); *Brown v. Colvin*, 2016 WL 795803, at *5 (E.D. Mo. Mar. 1, 2016) (finding ALJ did not err by leaving the record open and closing the record after the ALJ made efforts to obtain the records) (citing *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) ("[I]t is of some relevance to us that the lawyer did not obtain (or, so far as we know, try to obtain) the items that are now being complained about.")).

Moreover, Plaintiff did not ask the ALJ until months after the hearing to hold the record open for the submission of a different record related to PTSD, which is independent from his original request for an extension to submit a vocational rehabilitation screening. It was within the ALJ's discretion to deny the request. Even if the ALJ should have held the record open, any such error is harmless, as the Appeals Council did consider Dr. Dinwiddie's report, and determined that the report did "not show a reasonable probability that it would change the outcome of the decision." Tr. 2. *Hubbard*, 2014 WL 3600361, at *10 (finding any potential error harmless because the Appeal's Council did consider the post-hearing record and determined it would not have affected the ALJ's determination).

10

Further, the Court has carefully reviewed the underlying medical record and agrees with the Appeal's Council's conclusion that Dr. Dinwiddie's report would not have affected the ultimate determination in this case. Plaintiff based his SSI application solely on "burns" and "soft tissue injury of upper extremity," which was caused by a house fire in August of 2022 when a gas stove exploded. Tr. 80, 93, 96. His original Function Report, dated September 14, 2022, described physical impairments only. Tr. 223-30. Upon reconsideration of his denial, Plaintiff reported a "changed condition" as to "emotional stress" from trauma caused by the explosion. Tr. 96. His second Function Report, dated February 8, 2023, indicated he suffers "flashback[s] from the trauma [he] experienced," which he identified as post-traumatic stress disorder. Tr. 250. However, he did not testify to any PTSD-related symptoms during his November 30, 2023 hearing. Tr. 44-63. Medical records from the St. Francis Medical Center Wound Healing and Hyperbaric Center, dated October 5, 2022, November 1, 2022, December 13, 2022, surmised that Plaintiff had "probable PTSD," but management of that problem needed to be deferred to his primary care physician (PCP). Tr. 609.

Despite Plaintiff's references to his trauma in his second Function Report and Dr. Dinwiddie's opinion that Plaintiff suffered from PTSD, there is no medical record evidencing that Plaintiff was treated for mental issues during the relevant period. Although Dr. Dinwiddie indicated that Plaintiff likely did not seek treatment due to a "conviction that he cannot be helped because no one can understand what he experienced," Tr. 24, the record does not contain any documented symptoms showing that his PTSD was a severe impairment affecting his RFC during the relevant period. As the Commissioner noted, Plaintiff was repeatedly described to have a normal mental status. Tr. 426, 590, 604, 627, 789. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (ALJ's deficiency did not require reversal since it had no bearing on outcome). *See also McNeal v. Astrue*, 2013 WL 865592, at *6 (W.D. Mo. March 7, 2013) (affirming denial

11

of benefits; among other reasons, post-hearing evidence did not affect RFC, nor did it require further development of record because other evidence in record provided sufficient basis for the ALJ's decision) (*citing Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir.2004)); and *Auck v. Astrue,* 2008 WL 3979263, at *4 (W.D. Mo. Aug.25, 2008) (affirming denial of benefits; post-hearing evidence did not affect RFC).

### B. Evaluation of Treating Physicians

Plaintiff claims the ALJ incorrectly evaluated his bilateral hand burns under listing 8.08. ECF No. 15 at 10-14. He argues the ALJ should have placed controlling weight on the findings of his treating physicians who examined, diagnosed and documented their treatment. *Id*. He further asserts the ALJ improperly evaluated the opinion of Dr. Anubha Agarwal, M.D., who was a non-treating and non-examining consultative physician.

The ALJ determined that Plaintiff's "impairments do not meet or equal listing 8.08 because the record does not contain sufficient evidence of: (1) burns; and (2) extensive skin lesions that lasted or can be expected to last for a continuous period of at least 12 months." Tr. 33. To support this conclusion, the ALJ cited to every treatment note in the underlying record. Plaintiff contends that his burns did meet the listing 8.08 requirements because they resulted in his inability to use both upper extremities for work-related activities involving fine and gross movements. ECF No. 15 at 11. He argues the ALJ ignored his treatment on August 9, 2025 from the Augusta Burns Center as well as the limitations opined by Dr. Agarwal. *Id.*

Listing 8.08 relates to "[b]urns, with extensive skin lesions that have lasted or can be expected to last for a continuous period of at least 12 months." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 8.08. Extensive skin lesions are defined as "those that involve multiple body sites or critical body areas, and result in a very serious limitation." *Id.* § 8.00C.1. An example of extensive skin lesions that result in a very serious limitation is "[s]kin lesions that interfere with the motion of

12

your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity." *Id.* § 8.00C.1.a.

In considering Plaintiff's severe impairment of burns, the ALJ cited to every medical record related to the unfortunate incident that occurred on August 15, 2022, in which Plaintiff sustained 50% total body surface area burns to his bilateral upper extremities, right chest, and back from a house fire and explosion. *See* Tr. 25-43. On October 5, 2022, treating physician Dr. Matthew Schumer, M.D., observed that "[o]ther than some tightness in his hands (not currently receiving PT, hand therapy or otherwise) and hyperhidrosis in hands and forearms, he [wa]s without other acute complaint." Tr. 602. On November 1, 2022, the same physician noted that Plaintiff had started physical therapy, which "help[ed] quite a bit with the tightness in his hands and shoulders" and his "wounds improved adequately and promptly on care plan." Tr. 625, 628. On the same day, it was observed that "all open burn wounds previously assessed were deemed healed/closed." Tr. 767.

On December 12, 2022, Plaintiff told his occupational therapist Ute Smith that wrapping his finger "improved his active flexion motion." Tr. 825. The following day, Dr. Schumer noted Plaintiff had "increased ROM and increasing use of both hands." Tr. 788. On January 10, 2023, occupational therapist Nicole Cozean observed "above average improvements." Tr. 848. On January 13, 2023, Plaintiff reported to occupational therapist Megan Priday that he felt stronger; and, on January 17, 2023, he expressed that he was pleased with his progress. Tr. 962, 996. On January 19, 2023, Plaintiff completed and improved on different exercises and by January 20, 2023, he had shown "remarkable progress in ROM and strength" allowing him to reduce physical therapy to twice a week. Tr. 863, 867. On January 24, 2023, Plaintiff arrived "without pain or soreness," only "slight tightness in fingers in left hand," and was able to complete a variety of exercises during the session. Tr. 868, 977-979. At the Joseph M. Still Burn Center on

13

August 9, 2023, a 5-D Pruritus Itch Scale assessment revealed his itching was mild and never affected leisure, housework or work activities. Tr. 1001, 1015, 1027.

Throughout the record, Plaintiff consistently reported "0/10" hand pain. Tr. 840, 849, 857, 861, 865, 868. The ALJ noted "[t]he claimant's burns improved with grafting, and the claimant's stiffness, weakness, itching, and other symptoms improved with physical therapy." Tr. 34 (citing Tr. 602, 625, 767, 788, 825, 848, 863, 867-868, 962, 966, 977-979, 1001, 1015, 1027).

The ALJ further considered Plaintiff's ability to "perform a wide variety of activities of daily living" including playing videogames, writing, and preforming housework. Tr. 35 (citing Tr. 223-232, 242-251, 896, 1015, 1027; Testimony). The ALJ stated "[t]his range of activity is not entirely consistent with a finding of disability." Tr. 35.

The Court finds substantial evidence in the record as a whole supports the ALJ's finding that Plaintiff's burns did not cause the functional limitations required to meet the listing 8.08 requirements. Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). Where substantial evidence supports the Commissioner's decision, the Court must affirm, even if a different conclusion may be drawn from the evidence. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

The Court also finds that the ALJ did not err in evaluating the medical opinions in the record. When evaluating medical opinions for claims filed after March 27, 2017, an ALJ must follow 20 C.F.R. § 416.920c. This rule directs that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 416.920c(a). Instead, an ALJ evaluates the persuasiveness of any opinion or prior administrative medical finding by considering: (1) supportability of the opinion with

14

relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 416.920c(c).

The rules state that supportability and consistency are the "most important factors;" which is why an ALJ must explain how he considered these factors in the decision. 20 C.F.R. § 416.920c(b)(2). An ALJ may, but is not required to, explain how he considered the remaining factors. *Id*. See *Brian O v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 416.920c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'") (alterations omitted).

"The paragraph concerning the ALJ's evaluation of [a medical] opinion cannot be read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment." *Trosper v. Saul*, 2021 WL 1857124, at *5 (E.D. Mo. May 10, 2021). Therefore, in order to determine whether the ALJ properly analyzed the persuasiveness of the medical opinions, the Court must first review the ALJ's RFC assessment as a whole.

First, Plaintiff's argument that the Commissioner erred in failing to place controlling weight on the findings of his treating physicians simply because they were his treating doctors is based on outdated law. As discussed above, for claims filed after March 27, 2017, there should not be any specific evidentiary weight given to medical opinions and instead the most important factors to be considered are supportability and consistency. 20 C.F.R. § 416.920c. Plaintiff does

15

not provide any argument as to how the ALJ's evaluation of his treating physicians failed to properly address supportability or consistency.

Second, despite being a non-examining physician, the Court finds no error in the ALJ's treatment of Dr. Agarwal's opinion, which was as follows:

> Impartial medical expert Anubha Agarwal, MD, responded to the undersigned's interrogatories on February 22, 2024. Within his interrogatory responses, Dr. Agarwal opined that the claimant could: (1) occasionally lift up to 50 pounds; (2) occasionally carry up to 20 pounds; (3) sit for four hours at a time; (4) stand for four hours at a time; (5) walk for four hours at a time; (6) sit for eight hours in an eight-hour workday; (7) stand for eight hours in an eight-hour workday; (8) walk for eight hours in an eight-hour workday; (9) continuously reach, handle, push/pull, and operate foot controls; (10) occasionally finger and feel; and (11) continuously perform postural activities. Dr. Agarwal also opined that the claimant had several environmental limitations. Dr. Agarwal is an acceptable medical source and highly qualified. Dr. Agarwal also provided a detailed function-by-function assessment of the claimant's residual functional capacity. However, Dr. Agarwal's findings are only partially consistent with the current record. For example, Dr. Agarwal's finding that the claimant could occasionally carry up to 20 pounds is consistent with the claimant's status examination results, treatment history, and activities of daily living. However, Dr. Agarwal's finding that the claimant could continually climb ladders or scaffolds is inconsistent with the same. Dr. Agarwal did not have the benefit of physically examining the claimant, and he failed to support his findings with detailed explanations indicating which specific piece of objective evidence supported each limitation. Finally, Dr. Agarwal was not able to consider additional evidence that became available after he offered his findings. For these reasons, the undersigned finds persuasive Dr. Agarwal's findings that are consistent with the undersigned's residual functional capacity assessment. The undersigned finds unpersuasive Dr. Agarwal's findings that are inconsistent with the undersigned's residual functional capacity assessment.

Tr. 36 (internal citations omitted).

When discussing the consistency of a medical record, an ALJ cannot make conclusory statements without explanation. *See Johnson v. O'Malley*, 2024 WL 1328250, at *4 (E.D. Mo. Mar. 28, 2024) (finding ALJ's statement that "[t]he record as a whole is reasonably consistent with the findings" insufficient). Here, the ALJ sufficiently provided an explanation of how Dr. Agarwal's findings were consistent and inconsistent with the record by citations to "status examination results, treatment history, and activities of daily living." Tr. 36 (citing Tr. 602, 625,

16

767, 788, 825, 848, 863, 867-868, 962, 966, 977-979, 1001, 1015, 1027). The discussion is brief; however, the ALJ satisfies the consistency requirement as "an ALJ's explanation need not be exhaustive." *Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020). For example, Dr. Agarwal limited Plaintiff to occasional fingering and feeling, which was consistent with the ALJ's RFC finding that Plaintiff could occasionally finger and feel with his bilateral upper extremities. Tr. 33, 1057. Dr. Agarwal limited Plaintiff to occasional exposure to extreme cold, extreme heat, and vibration, while the ALJ determined he could not tolerate concentrated exposure to temperature extremes, work hazards, or any vibrations. Tr. 33, 1059. While Dr. Agarwal indicated he could continuously handle and reach, the ALJ limited such activity in the RFC due to inconsistency with the medical record. Thus, Plaintiff has not shown error regarding the ALJ's evaluation of Dr. Agarwal's opinion.

When considering supportability, "ALJs may note that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, did not examine the claimant, or did not provide a detailed explanation for opinion." *Starman v. Kijakazi*, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (citations omitted). In this case the ALJ considered three factors that impacted the supportability of Dr. Agarwal's findings causing his opinion to only be partially persuasive. Those factors were that Dr. Agarwal did not examine the Plaintiff, did not provide a detailed explanation for his opinions, and did not consider evidence available after his findings. Tr. 36. The ALJ did not discuss Dr. Agarwal's use of a checklist; however, the use of a checklist only reduces support for an opinion, it does not negate it. *Williams v. Saul*, 2021 WL 1222770, at *12 (E.D. Mo. Mar. 31, 2021).

Finally, Plaintiff argues that the report of Dr. Dinwiddie should have been considered. As previously discussed, Dr. Dinwiddie's report was untimely and did not show a reasonable

17

probability that it would have changed the outcome of the ALJ's decision. This analysis need not be readdressed.

**V.     Conclusion**

Based upon the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Ortez M.'s Complaint is **DISMISSED, with prejudice**. A separate judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall substitute Frank Bisignano for Martin J. O'Malley in the court record of this case.

So Ordered this 25th day of June, 2025.

_____
STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE